**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

REBECCA RUSH, individually, and on behalf of
all others similarly situated,
    Plaintiff,

v.

ATHENA COSMETICS, INC.,
    Defendant

Case No. 23-cv-8799

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Rebecca Rush brings this class action on behalf of herself and all others similarly situated against Athena Cosmetics, Inc. ("Athena").  Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief.

### I.    INTRODUCTION

1.    This class action arises from the false, misleading, unfair, and deceptive sale of beauty products without disclosing dangerous risks and side effects of the products' key ingredient.

2.    Defendant Athena manufactures and sells beauty products.  Among its products are RevitaLash Advanced Eye Serum, RevitaBrow Advanced Serum, RevitaLash Advanced Pro, and RevitaLash Advanced Sensitive (hereafter, the "Enhancement Serums" or  the "Products"). Athena deceptively marketed and sold the Enhancement Serums, without a prescription, as cosmetics or so-called "serums" (not as drugs), with no warning of serious side effects or risks. Instead, Athena touted the safety of the Enhancement Serums.

3.    The Enhancement Serums, however, contain dechloro dihdroxy difluoro ethylcloprostenolamide ("DDDE").  DDDE is a prostaglandin analog (PGA), which is in the same

1

class of compounds as the active ingredient found in prescription drugs that grows eyelashes, like Latisse®—which the FDA has approved for use only under the supervision of a physician due to the possible adverse effects associated with its active ingredient.

4.     PGAs such as DDDE improve hair growth, causing eye lashes and eyebrows to grow longer, darker, and thicker. However, they are also known to cause serious adverse effects to the eye and the structure around the eye, including but not limited to blepharitis, Meibomian Gland Dysfunction, chronic dry eye, redness, discoloration, pain or irritation, and other serious side effects.

5.     The United States Food and Drug Administration ("FDA") has warned manufacturers that a similar over-the-counter products containing PGAs are considered "drugs" and are associated with potential serious side effects. The FDA has further warned that lash and brow products containing PGAs are not safe for use except under supervision of a licensed physician.[1]

6.     Moreover, since it first started selling its PGA-containing Enhancements Serums over-the-counter, Athena has received numerous consumer complaints and reports that its products have caused consumers to suffer serious eye conditions and injuries.

7.     Athena did not disclose the risk of any side effects associated with its Enhancement Serums and has even affirmatively denied, in its marketing and labeling materials, that its products contain any active ingredient or "drug."  To the contrary, Athena falsely implied the Enhancement Serums are effective at improving the appearance of eyelashes and eyebrows because of the natural ingredients and "vitamins" contained therein. To the contrary, the longer hair effect is the result of the active ingredient, DDDE  a "drug" associated with many undisclosed side effects.

---

[1] *See, e.g.*, Apr. 18, 2011 FDA Letter (Ex. A hereto).

8.      In this manner, Athena has sold dangerous Enhancements Serums to thousands of consumers at approximately $38-$150 each, without fully disclosing all of the risks and material information about the Enhancement Serums.

9.      On July 19, 2012, Allergan, Inc. obtained an injunction against Athena, preventing it from selling its Enhancements Serums nationwide without FDA approval. *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. 07-1316, 2012 WL 12896222 (C.D. Cal. July 19, 2012). Later, the Ninth Circuit affirmed the injunction but limited it to the State of California only.  *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (9th Cir. 2013).  Thus, Athena is prohibited from selling its PGA containing Enhancements Serums in California, until it obtains FDA approval.  *See* Ex. B hereto (modified permanent injunction entered in the Central District of California).

10.     Athena has not obtained FDA approval for its PGA-containing Enhancements Serums and continues to sell the products over-the-counter to consumers nationwide, except for California.

11.     Athena continues to deceptively and fraudulently market its Enhancement Serums as beauty products or "cosmetics," misleadingly suggesting the Enhancement Serums are merely natural products that "enhance" appearance only without any effect on the human body (*viz.*, hair, lash, or brows).  This is untrue because the Enhancement Serums contain an active ingredient known to stimulate hair, lash, and brow growth, which also carries substantial health risks that Athena did not and does not disclose.

12.     Without the necessary disclosure of these risks, a reasonable consumer would not expect Athena's Enhancement Serums to be associated with any side effects.

13.    Plaintiff is one of many consumers who purchased the Enhancement Serums without knowing that using the products as directed by the manufacturer can cause serious side effects.

14.    Plaintiff brings this action for economic damages and injunctive relief (not for physical injuries) on behalf of all persons who paid for Athena's dangerous Products.  Athena's wrongful conduct constitutes (i) a violation of the New York General Business Law § 349, *et seq.* (and other states' analogous non-conflicting consumer protection laws), (ii) fraud (affirmative misrepresentation and omission), (iii) negligent misrepresentation and omission, (iv) breach of express warranty, (v) breach of implied warranty, (vi) negligence, and (vii) unjust enrichment.

**II.    PARTIES**

15.    Plaintiff Rebecca Rush is and was at all pertinent times a citizen of the state of New York.  Plaintiff, while in New York, purchased RevitaBrow Advanced and RevitaLash Advanced, among other products, in November 2021 for personal use, and in fact she so used the products. She paid approximately $110 for RevitaBrow Advanced and approximately $150.00 for RevitaLash Advanced.  Examples of these products are as follows:







16.     At the time of purchase, Plaintiff observed the marketing and advertisements for the Enhancement Serums, including those on Athena's website.  Upon receipt of the RevitaBrow Advanced and RevitaLash Advanced, she viewed the packaging, labeling, and instructions.  None of the foregoing properly disclosed the true facts regarding the RevitaBrow Advanced's and RevitaLash Advanced's ingredients and potential side effects of same. Had they done so, Plaintiff would not have purchased the RevitaBrow Advanced and RevitaLash Advanced; alternatively, she certainly would have paid less for them. Plaintiff reasonably understood the marketing and labeling of the RevitaBrow Advanced and RevitaLash Advanced to mean or imply that the product was safe and effective for its intended use and did not carry any undisclosed adverse effects.

17.     Plaintiff's use of RevitaBrow Advanced and RevitaLash Advanced caused pain and eye inflammation.

18.     Defendant Athena Cosmetics, Inc. is a Nevada corporation with its principal place of business at 1838 Eastman Avenue, Suite 200, Ventura, California.  At all times relevant hereto, Athena marketed, distributed, and sold Enhancement Serums directly through its website, as well as through popular retailers and other third-party sellers.

**III.    JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. There are well over 100 members of the proposed Class that are known to exist. Complete diversity exists between Plaintiff (a citizen of New York) and Athena (incorporated in Nevada and principal place of business in California).

20.     This Court has personal jurisdiction over Athena because Athena conducts substantial business in this District and in the State of New York through its sale of products

directly to New York consumers through its website which is viewable in New York and also through New York-based resellers or resellers that service New York. In addition, Plaintiff and other class members have suffered injury as a result of Athena's acts in this District.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.    COMMON ALLEGATIONS

22.    Athena fraudulently, deceptively, and unfairly marketed and sold the Enhancement Serums without disclosing all of the risks and side effects associated with these Products' ingredient, the prostaglandin analog ("PGA") dechloro dihydroxy difluoro ethylcloprostenolamide ("DDDE"). To the contrary, Athena affirmatively misrepresented that its Enhancement Serums were safe and free of any side effects.

23.    The Enhancement Serums' marketing, packaging, labeling, and instructions do not disclose that DDDE is an active ingredient that is associated with hair, lash, and brow growth as well as various side effects and contraindications.

24.    For example, in a similar context where a manufacturer was making lash and brow products with isopropyl cloprostenate ("ICP"), another PGA like DDDE, the FDA explained that similar "appearance" claims that Athena makes here were misleading "because their labeling makes misleading statements regarding the product's safety and fails to reveal material facts with respect to consequences that may result from the use of the product." The FDA went on to warn that ICP lash and brow products "are not safe for use except under supervision of a practitioner licensed to administer them."[2]

---

[2] *See* Apr. 18, 2011 FDA Ltr. (Ex. A hereto).

25.    The FDA further explained that: "'RapidLash' and 'NeuLash' are adulterated cosmetics under section 601(a) because they bear or contain a deleterious substance that may render them injurious to users under the conditions of use prescribed in their labeling. Specifically, 'RapidLash' and 'NeuLash' contain isopropyl cloprostenate which, under the conditions of use prescribed in the labeling, may cause the following injuries: ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy. In addition, as mentioned above, prostaglandin analogs for ophthalmic use are currently classified as Pregnancy Class C; women of childbearing age are considered at risk for injury."[3]

26.    Products containing ingredients such as DDDE and ICP are well-known in the scientific literature and medical community to pose health risks when used in and around the eyes.

27.    More specifically, DDDE is in a class of chemicals known as prostaglandin analogs (PGAs), which have long been used to reduce intraocular pressure in glaucoma patients. According to the Glaucoma Research Foundation, "prostaglandin analogs work by increasing the outflow of intraocular fluid from the eye."[4]  A well-known side effect of glaucoma treatments containing PGAs is that they cause eyelash growth.

28.    DDDE is a PGA in the same class as ICP, all of which are known to have an effect on the body, specifically, the growing, lengthening, and thickening of lashes and brows.[5]

29.    Simply put, Athena's Enhancement Serums would not be as effective at enhancing the appearance of lashes and eyebrows if they did not contain a PGA ingredient.

---

[3] *Id.*
[4] Prostaglandin Analogs, https://www.glaucoma.org/treatment/medication-guide.php#prostaglandin_analogs  (last accessed Nov. 8, 2023).
[5] *See, e.g.,* Jamison, A., et al., DO PROSTAGLANDIN ANALOGUE LASH LENGTHENERS CAUSE EYELID FAT AND VOLUME LOSS?, Aesth Surg. J. 2022 Oct. 13:42(11):1241-1249.

30.     The FDA has found that ICP, another PGA,  is "well known to have an effect on the structure or function of the body," the sale of which must include appropriate disclosure of side effects and risks (and must be sold only with a physician prescription).[6]  The FDA has found that ICP may cause side effects to the eye including, but not limited to, ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy.  This is consistent with the scientific literature and medical community's understanding of PGAs' (including DDDE's) risks.

31.     The European Commission's Scientific Committee on Consumer Safety recently stated that it was *not* able to conclude that DDDE (or its chemical equivalent ethyl tafluprostamide), is safe when used in cosmetic products intended for use in the proximity of the human eyes.  The Committee noted (contrary to Athena's marketing, packaging, labeling, and instructions for its Enhancement Serums) that there is insufficient data to conclude DDDE (and ICP) is safe for this purpose and use.

32.     In 2008, the FDA approved Latisse®, a similar product that contains an active ingredient called bimatoprost. Bimatoprost is another PGA, like DDDE, which increases eyelash hair length, thickness, and darkness in patients with hypotrichosis (or inadequacy) of the eyelashes.[7]  Latisse® is classified as an ophthalmic drug and cannot be obtained without a prescription.[8]

33.     Athena has not applied for or obtained FDA approval for any of its Enhancements Serums. It has chosen to sell its PGA-containing products directly to consumers without any

---

[6] *Id.*

[7] *See* Latisse Approval Letter (Dec. 24, 2008), *at* https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369s000_Approv.pdf.

[8] *See* Latisse   Full Prescribing Information (Mar. 2012), *at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/022369s005lbl.pdf.

warnings. To sidestep the reality that the scientific data does not support the safe administration of DDDE for use near the eyes, Athena misleadingly suggests in its marketing materials that its Enhancement Serums do not contain any active ingredients.  Instead, Athena deceptively implies to consumers that the Enhancement Serums merely contain benign, natural ingredients.

34.    For instance, Athena on its website has a  "Highlights" section discussing how the Enhancement Serums work. In advertising the products to consumers, Athena solely focuses on the natural *inactive* ingredients contained in the products, such as "green tea" and "ginseng" (see below).



35.    Athena's marketing materials are silent on its use of DDDE, the only ingredient in the Enhancement Serums that is scientifically and medically associated with hair, lash, and brow growth.

36.    In fact, until just very recently, Athena affirmatively misrepresented that the Enhancement Serums does not contain any active ingredient or "drug" that is associated with hair, lash and eye growth:

— Does RevitaLash® Advanced Eyelash Conditioner contain a "drug" ingredient?

No. All of the ingredients in RevitaLash® Advanced Eyelash Conditioner are cosmetic ingredients that have been included to serve a cosmetic purpose.

37.    Athena, knowing that DDDE is an active ingredient that stimulates hair, lash, and brow growth in its Enhancements Serums, deceptively implies to consumers that its products' effect comes from the natural ingredients contained therein.

38.    Athena affirmatively marketed and labeled  RevitaLash Advanced RevitaLash Brow as "serums" that "help[] condition, strengthen, and soften eyelashes," which "deliver[] essential nutrients directly to lashes to help them thrive."[9]  Athena underscores the efficacy of its Serums, stating 92% of users "[e]xperienced bolder, fuller-looking brows,"[10] and that its Serums "renew and rejuvenate lashes."[11]

39.    Athena further cites to purported consumer studies where, after 6 weeks, "98% reported improved lash appearance," "98% reported healthier-looking lashes," and "98% reported stronger lashes,"[12] or, for brows, after 8 weeks, "96% experienced improved appearance of eyebrows overall," "94% experienced more defined-looking eyebrows," and "92% experienced bolder, fuller-looking brows."[13]

---

[9] *See, e.g.*, https://www.revitalash.com/products/revitalash-advanced-eyelash-conditioner  (last accessed Nov. 8, 2023); https://www.revitalash.com/products/revitabrow-advanced-eyebrow-conditioner (last accessed Nov. 8, 2023).
[10] https://www.revitalash.com/products/revitabrow-advanced-eyebrow-conditioner (last accessed Nov. 8, 2023).
[11] https://www.revitalash.com/products/revitalash-advanced-pro (last accessed Nov. 8, 2023).
[12] https://www.revitalash.com/products/revitalash-advanced-eyelash-conditioner (last accessed Nov. 8, 2023).
[13] https://www.revitalash.com/products/revitabrow-advanced-eyebrow-conditioner (last accessed Nov. 8, 2023).

11

40.     Based on the totality of the circumstances surrounding Athena's marketing of its Enhancements Serums, it cannot plausibly claim that the intended use of its products was for anything other than hair, lash or brow growth. Likewise,  Athena's own authorized resellers[14] believed that these products were intended to stimulate hair growth. Numerous customers have commented on Athena's authorized resellers' websites about how the Enhancement Serums are intended for hair growth:

    a.    Neiman Marcus is one of Athena's authorized resellers.  On Neiman Marcus's website, through which it markets and sells the Enhancement Serums with Athena's authorization, customers note the Products are "for lash growth," that the Products "make[] my eyelashes so long!," that the Products "really do[] help[ lashes grow stronger and thicker!," and how the Products make "eyelashes noticably [sic] thicker, fuller."[15]

    b.    Nordstrom is another of Athena's authorized resellers. On Nordstrom's website, through which it markets and sells the Enhancement Serums with Athena's authorization, customers note the Products resulted in "a huge difference in my last length," that one customer's wife "was losing her eyelashes. Since using the product she has not only stopped losing them but they have come back better than before," how one's "lashes quickly went from average to thick, long and dark," and how another's "lashes are already significantly longer and thicker, more so than they have ever been before!"[16]

---

[14] *See* https://www.revitalash.com/pages/authorized-dealers (last accessed Nov. 8, 2023).
[15] *See* https://www.neimanmarcus.com/p/revitalash-cosmetics-revitalash-advanced-eyelash-conditioner-067-oz-prod219870472 (last accessed Nov. 8, 2023).
[16] *See* https://www.nordstrom.com/s/advanced-eyelash-conditioner/3222988 (last accessed Nov. 8, 2023).

c.  At the website of another authorized reseller, the Dermstore, customers state: "My eyelashes are longer and thicker already," "I love how long it's made my eyelashes!," "I'm noticing that some hairs are starting to grow back," and "makes my eyelashes longer and fuller."[17]

d.  Non-authorized resellers on Amazon similar contain reviews trumpeting the Products' ability to grow lashes and brows: "RevitaLash not only grows new lashes, it gives slight length also" and "my lashes have grown immensely."[18]

41.  Whether or not DDDE is an active ingredient or "drug," the fact remains DDDE poses substantial risks. Athena affirmatively trumpeted the safety and efficacy of the Enhancement Serums, without disclosing any of the risks.

42.  For instance, in a set of Athena's standardized answers to frequently asked questions provided to one of its authorized resellers, Athena states the Enhancement Serums have "an excellent safety profile," have "been shown to be safe in multiple tests conducted by independent research laboratories," and "has been shown in these tests to be safe to the skin and to eyes in adult study subjects."  In fact, Athena states that, as the manufacturer of cosmetics that "are not cleared or approved by the FDA," "[i]t is the responsibility of the cosmetic manufacturer to substantiate the safety of their product and to verify that their claims are accurate and truthful . . . in every case [the Enhancement Serums have] been found to be safe."  Athena continues that "an

---

[17] *See* https://www.dermstore.com/revitalash-advanced-eyelash-conditioner-2-ml/11370772.reviews (last accessed Nov. 8, 2023).
[18] *See* https://www.amazon.com/RevitaLash-Cosmetics-Conditioner-Physician-Developed/dp/B005CVGJFM/ref=sr_1_1_sspa?hvadid=657228666438&hvdev=c&hvlocphy=9007474&hvnetw=g&hvqmt=b&hvrand=8873402903377236623&hvtargid=kwd-296104834962&hydadcr=20686_13453114&keywords=revitalash%2Beyelash%2Bgrowth%2Bserum&qid=1698775715&sr=8-1-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&th=1 (last accessed Nov. 8, 2023).

independent dermatologist" reviewed the Products' profiles and concluded they are "a safe cosmetic product."

43.    Each of Athena's Enhancement Serums contain DDDE.[19]  Every Enhancement Serum, including those purchased by Plaintiff and other class members, contains DDDE in the same quantities that carry the same undisclosed risks.

44.    Athena materially omits and does not adequately disclose to consumers that the Enhancement Serums carry certain health risks.

45.    By omitting this information, Athena actively misrepresents and conceals material facts and leads reasonable consumers to believe they are purchasing Products that are safe and do not have any of the know risks.

46.    In marketing and selling the Enhancement Serums, Athena materially omits and does not adequately disclose to consumers that DDDE is known to cause or may cause eye-related diseases or conditions, including but not limited to hyperemia, macular edema, ocular inflammation, and the lowering of intraocular pressure. Athena also materially omits that when PGAs are applied to areas near the face, they can cause excess hair growth outside the treatment area, for instance on the cheek. Athena further fails to mention that DDDE can cause clumps of hair, brows, and lashes to completely fall out instead of grow.

47.    Athena cannot plausibly contend it was unaware about the dangerous, undisclosed side effects of the PGA in the Enhancement Serums. Aside from the known scientific and medical information discussed above, numerous customers have complained about developing undisclosed side effects after using the Enhancement Serums.  For example:

---

[19] *See, e.g.*, https://www.revitalash.com/products/revitalash-advanced-eyelash-conditioner  (last accessed Nov. 8, 2023); https://www.revitalash.com/products/revitabrow-advanced-eyebrow-conditioner (last accessed Nov. 8, 2023).

a. **"Don't make the same mistake I did.** I didn't believe it would happen to me because I never get bad side effects from anything, but after about six months using Revitalash 3-4x a week, I am experiencing a plethora of issues with my meibomian gland as a result of the topical prostaglandin analogs in Revitalash. These pictures were taken less than a year apart: age 25 vs. age 26... My optometrist said he sees this happen all the time with lash serums. Please do not make the same mistake I did. My eyes might not look that bad in the photo, but that's because I didn't include pictures of my multiple pingueculas, yellowing of the corners of my eyes, random Axenfeld nerve loops that were never there previously... And that's not even touching on all the orbital fat loss I've had. My eyelid skin didn't shrink, just the fat underneath it, so it's crepey and wrinkling now...awesome. Revitalash has aged me several years in the span of only a few months. All I can do now is hope I'm one of the lucky ones whose eyes go back to normal now that I've stopped."[20]

b. **"itching eyes.** Only giving a one star not because product didn't work but unfortunately I was only able to use one time. So I put it on in the morning after I showered since I knew I was staying in all day and didn't put anything else on my face all day. Within minutes my eyes were extremely red, and also very itchy the itch worsened through the day so I flushed my eyes with water twice through that day and the redness was intense and the itching continued until I went to bed and the next was completely gone. So just beware of that possible side effect."[21]

---

[20] *See* https://www.nordstrom.com/s/advanced-eyelash-conditioner/3222988 (last accessed Nov. 8, 2023).

[21] *See* https://www.nordstrom.com/s/advanced-eyelash-conditioner/3222988 (last accessed Nov. 8, 2023).

c.  "One of the reasons that previous formulas of Revitalash were not approved by the FDA was because they caused blurred vision in some subjects, due to damage done to the optic nerve."[22]  This same website also noted reports of "brittle, sparse lashes," "skin irritation," "skin discoloration," and "iris pigment color change."[23]

d.  "**Not My Favorite**.  RevitaLash burns my eyes.  I will not buy it again."[24]

e.  **"Allergic Reaction.**  I've used Neulash in the past but thought "Hey! I'll try a different product. See if the results are the same." That was my first mistake. I used Revitalash according the directions for the first week. I did not do anything different to my skincare regime. On day 3 my eyes started to feel irritated, scratchy and all around miserable. By day 5, I was at the Urgent Care asking for steroid drops and an antibiotic. My eyes had become so red and miserable. I was constantly rubbing them to stop the irritation. It's been close to 2 weeks since I stopped using the product and my eyes are still pretty sensitive (not to mention I've lost lashes due to all the rubbing). Dermstore did not give me any problems with the return. Perhaps when all the craziness stops I'll go back to Neulash in hopes of growing the lashes I lost with Revitalash."[25]

48.  Despite notice and knowledge of the injuries caused by the Enhancement Serums, Athena has failed and/or refused to provide an adequate remedy for the systemic injuries caused

---

[22] *See* https://healthfully.com/health-risks-of-revitalash-3400995.html (last accessed Nov. 8, 2023).

[23] *Id.*

[24] *See* https://www.dermstore.com/revitalash-advanced-eyelash-conditioner-2-ml/11370772.reviews?pageNumber=43&sortBy=rating&orderBy=DESC (last accessed Nov. 8, 2023).

[25] *See* https://www.dermstore.com/revitalash-advanced-eyelash-conditioner-2-ml/11370772.reviews?pageNumber=43&sortBy=rating&orderBy=DESC (last accessed Nov. 8, 2023).

by the Enhancement Serums. In fact, until very recently, Athena's website omitted any mention of serious side effects. Only now, in the last few weeks, does Athena's website include any statement about potential side effects of DDDE or the Enhancement Serums generally. But rather than fully and adequately disclosing those side effects, Athena misleadingly downplays them by claiming, falsely, that the cause of any effect is not known, or is simply some unspecified allergic reaction. Prior to this very recent half-hearted and still insufficient effort, Athena did not adequately disclose the risks posed by the Enhancement Serums generally, or DDDE specifically, in its marketing materials, or on the product labeling, packaging, and instructions at all.

49. Not only does Athena fail to disclose the possibility of severe and potentially permanent side effects, but Athena wrongly represents that the company treats "safety as a top priority" and that adverse effects are "rare."[26]

50. Whether a product has adverse side effects caused by an ingredient is material information that reasonable consumers would consider in deciding to buy the Products. Indeed, the FDA has advised that, because of its potentially harmful effects, products containing PGAs, are "not safe for use except under the supervision of a practitioner licensed by law to administer them."[27]

51. Reasonable consumers would consider the affirmatively misrepresented and omitted facts to be important in determining whether or not to purchase the Enhancement Serums at all, or alternatively at the prices at which the Products were purchased.

---

[26] *See* https://www.revitalash.com/products/revitalash-advanced-sensitive (last accessed Nov. 8, 2023).

[27] Lifetech Resources LLC Warning Letter (Apr. 18, 2011), https://wayback.archive-it.org/7993/20170111100914/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm

52.    Athea affirmatively misrepresented and omitted the above-described material information with the knowledge that its omissions would mislead and deceive consumers. Alternatively, Athena was reckless or negligent in not knowing that the omissions were deceptive and/or misleading.

53.    Plaintiff and other class members relied, to their detriment, on Athena to distribute safe products. Instead, Athena marketed and sold Enhancement Serums that contain an ingredient known to cause undisclosed, serious adverse effects.

54.    As the direct and proximate result of Athena's deceptive and/or misleading material misrepresentations and omissions, Plaintiff and other class members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums.

55.    Athena has not recalled, relabeled, or reformulated the Enhancement Serums, nor has it adequately warned consumers about the dangers associated with using the Enhancement Serums.

56.    Athena has fraudulently concealed its wrongdoing. Plaintiff and other class members exercised reasonable diligence but could not discover the full scope of Athena's wrongful conduct earlier.  For instance, Athena has yet to reveal the truth about the Enhancement Serums' undisclosed risks.  To the contrary, Athena falsely maintains to this day that its Products are safe, merchantable, and fit for intended purposes. Relatedly, Athena actively conceals the prior *Allergan* litigation by white-washing it as nothing more than a "court ruling in a private lawsuit" when Athena explains why it does not sell its Products in its home state of California.[28]

---

[28]https://www.revitalash.com/pages/faq#:~:text=Why%20isn't%20RevitaLash%C2%AE,retailers%20in%20over%2070%20countries (last accessed Nov. 8, 2023).

## V.    **CLASS ALLEGATIONS**

57.    Plaintiff brings this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Athena  on behalf of Plaintiff's own behalf and on the below classes (collectively referred to as "the Class"), to the extent class members from these jurisdictions can be grouped together for purposes of class treatment:

> National Class:   All individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.

> New York Subclass: All individuals in New York who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.

58.    Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

59.    Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

60.    Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

61.    **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially tens or hundreds of thousands of consumers nationwide, and thousands of consumers in New York alone. The Class is therefore so numerous that joinder of all members is impracticable.

62.    **Commonality**:  Common questions of law and fact exist as to all class members, including but not limited to:

a.  Whether Athena affirmatively, misleading, deceptively, and unfairly misrepresents the safety profile and risks of the Enhancement Serums;

b.  Whether Athena omitted the safety profile and risks of the Enhancement Serums;

c.  Whether Athena had a duty to disclose material facts about safety concerns associated with the Enhancement Serums;

d.  Whether Athena had a duty to not misrepresent material facts about safety concerns associated with the Enhancement Serums;

e.  Whether Athena failed to disclose material facts regarding safety concerns associated with the Enhancement Serums;

f.  Whether Athena's nondisclosures and misrepresentations would be material to a reasonable consumer;

g.  Whether Athena was unjustly enriched by receiving monies in exchange for the Enhancement Serums;

h.  Whether the challenged practices harmed Plaintiff and other members of the Class; and

i.  Whether Plaintiff and other members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

63.    **Typicality**:  Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm.  Plaintiff has substantially the same interest in this matter as all other class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all other class members.

64.    **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and

have retained competent counsel experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

65.     The elements of Rule 23(b)(2) are met. Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.  Plaintiff and other putative class members would at least have the full opportunity to consider whether to buy the Enhancement Serums in the future if Defendant fully discloses all omitted information about the Products.

66.     The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Although many other class members have claims against Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

VI.    **CAUSES OF ACTION**

**Count I – Violation of Consumer Protection Acts**

67.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

68.    Defendant has violated the consumer protection statutes as follows:

   a.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

   b.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

   c.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

   d.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

   e.    Defendant violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus.  Prof. Code § 17200, *et seq.*;

   f.    Defendant violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

   g.    Defendant violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

   h.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

   i.    Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of Conn. Gen. Stat. § 42-110b, *et seq*.;

j.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq*.;

k.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq*.;

l.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq*.;

m.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq*.;

n.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq*.;

o.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq*.;

p.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq*.;

q.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq*.;

r.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq*.;

s.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq*.;

t.      Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq*.;

u.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

w.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

x.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

y.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

z.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

aa.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

bb.    Defendant engaged in unfair competition or unfair or deceptive acts  or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

cc.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

dd.    Defendant engaged in unfair competition or unfair or deceptive acts  or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

ee.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ff.    Defendant engaged in unfair competition or unfair or deceptive acts or

practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

gg.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

hh.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

ii.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

jj.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

kk.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

ll.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

mm.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

nn.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

oo.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

pp.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*;

qq.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

rr.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

ss.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

tt.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

uu.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

vv.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*;

ww.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

xx.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

yy.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

zz.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*;

aaa.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

bbb.  Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico.

69. Defendant's conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

70. Each Plaintiff and other Class Member is a consumer or person aggrieved by Defendant's misconduct within the meaning of the above statutes.

71. Defendant's conduct as alleged herein constitutes unfair, deceptive, misleading, or otherwise actionable practices as to Defendant's conduct concerning the ingredients and safety profile for the Enhancement Serums. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

72. To the extent applicable, Defendant knew, intended, or should have known that its fraudulent and deceptive acts, omissions, or concealment would induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and other Class Members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

73. Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Enhancement Serums in the course of Defendant's business. Specifically, Defendant represented that the Enhancement Serums were safe and effective, and did not carry any undisclosed risks.  But this was not the case, as the Enhancement Serums carried health risks that were not disclosed. Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

74. The existence of undisclosed risks would have been material to Plaintiffs and other

class members.

75.    Plaintiff and other class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other class members would not have purchased the Enhancement Serums, or not have purchased on the same terms (e.g., purchased them for substantially less), had they known the truth.

76.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

77.    To the extent applicable, pre-suit notice and/or a demand letter was sent to Defendant prior to the filing of the Complaint.

**Count II – Fraud (Affirmative Misrepresentation, and Omission)**

78.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

79.    Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, and did not contain any undisclosed risks.  But this was not the case with risks that were not disclosed.

80.    Defendant omitted material facts including, inter alia, that Enhancement Serums carried undisclosed risks.

81.    Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

82.     Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known carried undisclosed risks.  Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms (e.g., purchased them for substantially less), had they known the truth.

83.     Defendant knew, was reckless in its disregard for, or should have known of, the true character of Enhancement Serums, including but not limited to their undisclosed risks.  Prior information in the art, among other things, put Defendant on actual or constructive notice of this.

84.     Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

85.     Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums.  To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

86.     Defendant's misrepresentations and omissions were material.  Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

87.     Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

88.     To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions.  The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each class member at time of purchase through Defendant's marketing, packaging, labeling, and instructions.  To the

extent applicable, reliance may be presumed in these circumstances.

89.     Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

90.     Plaintiff and other class members were damaged by reason of Defendant's misrepresentations and omissions.

**Count III – Negligent Misrepresentation (Affirmative Misstatement and Omission)**

91.     Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

92.     Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, and did not carry undisclosed risks.  But this was not the case, as the Enhancement Serums carried risks that were not disclosed.

93.     Defendant omitted material facts including the Enhancement Serums' undisclosed risks.

94.     Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

95.     Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known carried undisclosed risks.  Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms (e.g., purchased them for substantially less), had they known the truth.

96.     Defendant knew, was reckless in its disregard for, or should have known of, the true character of Enhancement Serums, including but not limited to their undisclosed risks.  Prior information in the art, among other things, put Defendant on actual or constructive notice of this.

97.     Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

98.     Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums.  To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

99.     Defendant's misrepresentations and omissions were material.

100.     Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

101.     To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions.  The same or substantively identical misrepresentations and omissions were communicated to Plaintiff and each class member at time of purchase through its marketing, packaging, labeling and instructions.  To the extent applicable, reliance may be presumed in these circumstances.

102.     Defendant had owed a special duty to Plaintiff and each other class member on account of the special relationship that existed between Defendant, as a seller of a product to be applied to the human body (and to the sensitive areas of the human face no less).  On account of the known or knowable application and use of the Enhancement Serums, and Defendant's superior knowledge and position as manufacturer, distributor, and seller of the Enhancement Serums,

Defendant had a special duty to disclose risks of the Enhancement Serums to consumers such as Plaintiff and other class members.

103.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

104.    Plaintiff and other class members were damaged by reason of Defendant's misrepresentations and omissions.

**Count IV – Breach of Express Warranty**

105.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

106.    Plaintiff and each other class member formed a contract with Defendant at the time they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant on the Enhancement Serums' packaging, labeling and instructions, and through marketing and advertising, including that the Products would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product, and the lack of disclosure about dangerous side effects.  This marketing, packaging, labeling and instructions constitute express warranties and became part of the basis of the bargain, and are part of the standardized expectation between class members and Defendant.

107.    Defendant expressly warranted that its Enhancement Serums were cosmetic products that were safe and effective for intended use, and did not contain any undisclosed risks.

108.    Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement

Serums, and the Products' packaging, labeling, and instructions.

109. Defendant sold Enhancement Serums that they expressly warranted were safe and effective cosmetics that did not contain any undisclosed risks.

110. Defendant's Enhancement Serums did not conform to its express representations and warranties because the products contained undisclosed risks.

111. At all times relevant times, New York and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

112. At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and expressly warranted the products were cosmetic products were safe and effective for intended use, and did not contain any undisclosed risk. These affirmative representations became part of the basis of the bargain in every purchase.

113. Defendant breached its express warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose. Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

114. Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products carried undisclosed risks, or alternatively would not have purchased them on the same terms (e.g., purchased them for substantially less).

115. To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members. Defendant maintained a strict list of authorized

resellers. Defendant directly sold the Enhancement Serums itself or through authorized resellers operating under strict direction from Defendant.

116.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Products, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

117.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

118.    Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**Count V – Breach of Implied Warranty**

119.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

120.    Plaintiff and each other class member formed a contract with Defendant at the time they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant in its marketing, packaging, labeling and instructions for the Enhancement Serums, including that the product would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product, and the lack of disclosure about dangerous side effects.   The foregoing constitute implied warranties and became part of the basis of the bargain, and are part of the standardized expectation between class members and Defendant

121.    Defendant impliedly warranted that its Enhancement Serums were cosmetic products, were safe and effective for intended use, and did not contain any undisclosed risks.

122.    Athena made these misrepresentations, or omitted material information, in its marketing (including its website and the websites of its authorized resellers) for the Enhancement Serums, and the Products' packaging, labeling, and instructions.

123.    Defendant sold Enhancement Serums that they impliedly warranted were safe and effective cosmetics that did not contain any undisclosed risks.

124.    Defendant's Enhancement Serums did not conform to its implied representations and warranties because the products contained undisclosed risks.

125.    At all times relevant times New York and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

126.    At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and impliedly warranted the products were cosmetic products, were safe and effective for intended use, and did not contain any undisclosed risk.  These representations became part of the basis of the bargain in every purchase.

127.    Defendant breached its implied warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose.  Defendant promised a safe and effective product, but the Products were not as promised because their actual safety profile was not the same as that represented and bargained for.

128.    Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products carried undisclosed risks, or alternatively would not have purchase them on the same terms (e.g., purchased them for substantially less).

129.    To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members.  Further, Plaintiff and each other class member were intended third-party beneficiaries to the extent Defendant made any warranty or representation to a reseller who in turn resold Enhancement Serums to consumers.  Defendant maintained a strict list of authorized resellers.  Defendant directly sold the Enhancement Serums itself or through authorized resellers operating under strict direction from Defendant.

130.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of the Enhancement Serums, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

131.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

132.    Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**Count VI – Negligence**

133.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

134.    Defendant owed a duty to Plaintiff and each other class member to ensure its Enhancement Serums complied were safe and effective, and did not contain any undisclosed active

risks.

135.    Defendant owed a duty to Plaintiff and each other class member because the latter were foreseeable, reasonable, and probably users of Enhancement Serums, and victims of Defendant's deceptive and wrongful conduct.  Defendant knew, or should have known, that its Enhancement Serums were not safe and effective, and contained undisclosed risks.

136.    Defendant inadequately oversaw its own manufacture, distribution, marketing, and sale of its Enhancement Serums, resulting in the Enhancement Serums being sold to consumers without disclosure of the true character of the product.

137.    Defendant maintained or should have maintained a special relationship with Plaintiff and each other class member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that its Enhancement Serums were safe and effective, and did not contain any undisclosed risks.

138.    Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and each other class member.

139.    Defendant breached duties owed to Plaintiff and each other class member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each other class member.

140.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

141.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at

trial.

**Count VII – Unjust Enrichment**

142.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New York law and all states' laws that do not conflict with New York law.

143.    Defendant was unjustly enriched at the expense of Plaintiff and each other class member by virtue of their paying for Defendant's Enhancement Serums.  Plaintiff and each other class member conferred a direct benefit on Defendant by purchasing Defendant's Enhancement Serums either directly from Defendant or through a reseller.  Defendant maintained a strict list of authorized resellers during the class period.

144.    Defendant profited immensely from selling the Enhancement Serums that carried undisclosed risks.

145.    Plaintiff and each other class member were unjustly deprived of money obtained by Defendant as a result of the improper amounts paid for Defendant's Enhancement Serums.  It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and each other class member as a result of Defendant's wrongful conduct alleged.

146.    In the alternative to the other causes of actions alleged herein, Plaintiff and each other class member have no adequate remedy at law.

147.    Although Plaintiff does not seek to recover for physical injuries, Defendant's Enhancement Serums carried undisclosed risks and resulted in physical impact to Plaintiff and other class members, including unbargained for, undisclosed sub-cellular or structural impact on Plaintiff's and each other class member's face and eye area.

148.    Plaintiff and each other class member are entitled to seek and do seek restitution

from Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant's by virtue of its wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following judgment:

A.      An order certifying this action as a class action;

B.      An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

C.      A declaration that Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

D.      An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described herein;

E.      Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid or reimbursed for Enhancement Serums and Defendant's ill-gotten gains;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      An award of statutory penalties to the extent available;

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.


Dated: November 30, 2023

                                     Respectfully Submitted,

                                     */s/ Peter Samberg*

                                     Peter Samberg
                                     **Peter Samberg – Attorney at Law**
                                     100 Ardsley Ave. West
                                     Ardsley on Hudson, NY 10503
                                     Tel: 914-391-1213
                                     psamberg@gmail.com

                                     Ruben Honik  (*PHV* Pending)
                                     David J. Stanoch, Of Counsel (*PHV* Pending)
                                     **Honik LLC**
                                     1515 Market Street, Suite 1100
                                     Philadelphia, PA 19102
                                     Tel: 267-435-1300
                                     ruben@honiklaw.com
                                     david@honiklaw.com

                                     Louiza Tarassova, Esq. (*PHV* Pending)
                                     **Lou Law**
                                     2180 N Park Ave., Suite 208
                                     Winter Park, FL  32789
                                     Tel: 407-622-1885
                                     louiza@mylawadvocate.com